**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**TINA SHAW**                                                                          **PLAINTIFF**

**vs.**                                                  **CIVIL ACTION NO. 3:12CV54-SAA**

**MICHAEL ASTRUE,
Commissioner of Social Security**                                         **DEFENDANT**

**MEMORANDUM OPINION**

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Tina Shaw for a period of disability and disability insurance benefits (DIB) under Section 216(I) and 223 of the Social Security Act. Plaintiff protectively applied for benefits on July 17, 2008, alleging that she became disabled on May 10, 2008 due to a left hand injury and amputation of a finger, bilateral carpal tunnel syndrome, bulging disc/lumbar disc disease, mood disorder and post-traumatic stress disorder. Docket 8, p. 32, 131. The plaintiff's claim was denied initially on September 29, 2008 (*Id.* at 52-53) and on reconsideration on December 10, 2008. *Id.* at 57-58. Plaintiff timely requested a hearing on March 26, 2009 (*Id.* at 60) and testified at the administrative hearing that was held on October 19, 2010. Docket 8, p. 28-48. The ALJ issued an unfavorable decision on November 12, 2010. *Id.* at 6-22. The Appeals Council denied plaintiff's request for a review on March 27, 2012. *Id.* at 1-3. The plaintiff timely filed the instant appeal from the Commissioner's most recent decision, and it is now ripe for review.

Because both parties have consented to have a magistrate judge conduct all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

## I.  FACTS

The plaintiff was born on June 22, 1968 and was forty-two years old at the time of the hearing.  Docket 8, p. 127.  She has a twelfth grade education.  *Id.* at p. 31.  Her past relevant work was as a dispatcher and slot supervisor.  *Id.* at 45.  She contends that she became disabled on May 10, 2008 when she was involved in an accident loading a horse.  *Id.* at 131.  While she was loading a horse, her left hand got caught in a lead line resulting in a severe degloving injury which damaged nerves and tendons to her left hand and, ultimately, amputation of her left fifth finger.  Plaintiff also alleges that her bilateral carpal tunnel syndrome, bulging disc/lumbar disc disease, mood disorder and post-traumatic stress disorder keep her from being able to work.  Plaintiff says that because of the injury to her left hand, she is not able to type, and her anxiety/mood disorder and PTSD keep her from being able to work in settings that require interaction with others.  The ALJ rejected her claims of disability, concluding that even though the plaintiff had severe impairments, she could perform her past relevant work as a dispatcher.  Consequently, plaintiff was not disabled.

Plaintiff claims that the ALJ's findings of fact are not substantiated by the record evidence, that his opinions as to limitations are without substantial basis in the record, that he did not afford proper weight to the opinions of plaintiff's treating physician Dr. Montgomery and the agency consulting psychologist Joe Ed Morris and that his ultimate decision is not supported by the totality of the evidence.  Docket 13.  Although plaintiff raises these four issues as grounds for appeal, the court will focus on the fact that the ALJ should have found plaintiff disabled because the proper hypothetical question posed to the VE supports a finding of disabled at Step 5.

## II.  STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[3] Second, plaintiff must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[5] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[6] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[7] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she

---

[1] *See* 20 C.F.R. §§ 404.1520 (2010).

[2] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[3] 20 C.F.R. §§ 404.1520(b)(2010).

[4] 20 C.F.R. §§ 404.1520(c)(2010).

[5] 20 C.F.R. §§ 404.1520(d)(2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

[6] 20 C.F.R. §§ 404.1520(e)(2010).

[7] 20 C.F.R §§ 404.1520(g)(2010).

cannot, in fact, perform that work.[8]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999); citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[9] even if it finds that the evidence leans against the Commissioner's decision.[10] The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir.

---

[8]*Muse*, 925 F.2d at 789.

[9]*Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[10]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

4

1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

Plaintiff argues that the ALJ failed to properly consider the opinions of her treating physician, Dr. Montgomery, as to her left hand limitations. Docket 13, p. 8-17. This single issue is determinative as the VE testified that if plaintiff is unable to type with her left hand and grip or push/pull, she cannot return to her previous work, and there are no other jobs that plaintiff can perform. Docket 8, p. 46-47. The Commissioner responds that the "ALJ accounted for Plaintiff's left hand impairment by recognizing that Plaintiff could not feel texture and included the limitation in his hypothetical to the vocational expert." Docket 14, p. 14. The Commissioner further responds that the VE testified that plaintiff can perform her past relevant work as a dispatcher despite her inability to type. Docket 14, p. 19. This is simply incorrect. The VE testified that an issue with manual dexterity such as not being able to type would prevent her from performing the job of dispatcher or any other job. Docket 8, p. 46.

In support of the ALJ's RFC, the Commissioner asserts that the medical evidence provides substantial evidence for the ALJ's decision [Docket 14, p. 15] because on her "October 2008 disability report, Plaintiff stated that she retained 50 percent of the use of her left hand. (Docket 8, p. 20)." However, the Commissioner offers no explanation for the ALJ's failure to provide any limitation in his RFC as to left hand use other than the inability to feel texture. Docket 14. After review of the medical evidence of record, the court concludes that such a limited interpretation of the injury to plaintiff's hand is patently incorrect.

According to the Commissioner, the ALJ properly rejected Dr. Montgomery's opinions as overly restrictive and unsupported by the record. Docket 14, p. 17-18. It should be noted that

5

Dr. Montgomery was the only treating physician to provide a Medical Source Statement [MSS] and, having treated her for over two years, plaintiff's longest-treating physician of record. Docket 378-84. The ALJ explained that he

> gives consideration to Dr. Montgomery's assessment, because he is the treating physician. However, the undersigned gives little weight to Dr. Montgomery's opinion regarding the claimant's ability to lift/carry and stand/walk . . . . Disabling bilateral hand limitations are inconsistent with the claimant's activities of daily living and lack of objective finding related to the right hand subsequent to carpal tunnel release.

Docket 8, p. 20. In explaining that his RFC is supported by the record, the ALJ states "[t]here is no evidence that the carpal tunnel releases were not successful. Physical examinations of 2009 fail to show any abnormalities of the right hand or right upper extremity." Docket 8, p. 21. Throughout his opinion, the ALJ ignores the injuries to plaintiff's left hand and notes facts to support his opinion only as they relate to the right hand. In fact, the ALJ conveniently did not indicate how much weight he afforded to Dr. Montgomery's opinions relative to plaintiff's ability to push/pull or her manipulative limitations, the most important limitations in this case. He only indicated that he gave limited weight to Dr. Montgomery's opinion regarding plaintiff's ability to lift/carry and stand/walk. *Id.* at 20.

Interestingly, as it relates to plaintiff's left hand, the ALJ afforded Dr. Assaf's opinion significant weight and notes that he "declines to give it controlling weight because he imposed these restrictions prior to the claimant's carpal tunnel surgeries." Docket 8, p. 19. Dr. Assaf, a neurologist, only saw plaintiff on one occasion and that was a referral from Dr. Montgomery for an opinion as to plaintiff's bulging disc. Docket 8, p. 408. Neither his handwritten notes nor his correspondence to Dr. Montgomery indicate that he was examining plaintiff to evaluate her left hand injury. In fact, it does not appear that Dr. Assaf made any specific examination of plaintiff'

left hand such as a grip strength test. He was asked by Dr. Montgomery to examine the plaintiff for back issues and resulting complications, and it appears that that was all he did. His failure to provide any opinion as to plaintiff's ability to use her left hand following her accident does not necessarily indicate that she does not have any limitations as to her left hand, but instead may simply indicate that Dr. Assaf was not concerned with those limitations during his examination.[11] However, Dr. Assaf's failure to address any left hand limitation is cited by both the Commissioner and the ALJ as an acknowledgment by Dr. Assaf that plaintiff does not suffer any limitation.

The ALJ noted that Dr. Terry treated plaintiff for bilateral carpal tunnel syndrome and performed carpal tunnel releases, but failed to indicate the weight he afforded to Dr. Terry's opinions and notes. Docket 8, p. 19. However, the ALJ still relied upon Dr. Terry's notes and the lack of any limitation contained in them to support his RFC.

Dr. Louis Sadler, referred to by the ALJ as Dr. Hand, reviewed the plaintiff's records and restricted plaintiff to medium exertion with no left hand pushing/pulling and only occasional left hand handling and fingering. Docket 8, p. 177-84. The ALJ only afforded Dr. Sadler's opinion limited weight because of "new evidence and claimant's subjective complaints." Docket 8, p. 19. The ALJ fails to provide any indication of what new evidence there is relating to plaintiff's left hand limitations, and the undersigned does not see any new evidence relating to plaintiff's left hand limitations in the record other than the carpal tunnel related records.

Without doubt the responsibility to determine the plaintiff's residual functional capacity

---

[11] Moreover, multiple other evaluations in the record, both before and after plaintiff's carpal tunnel surgeries, note that plaintiff has limitations on both gross and fine manipulation. Docket 8, pp. 182, 193, 226.

belongs to the ALJ, *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995), but in making this determination he must consider all the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite any physical and mental limitations. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). An ALJ may not establish physical limitations or the lack of such limitations without medical proof to support that conclusion. *Patterson v. Astrue*, 2008 WL 5104746, *4 (N.D. Miss. 2008), citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). "The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law or judging matters entrusted to experts." *Nyugen v. Chater*, 172 F.3d at 35.

At the hearing, the ALJ posed two hypothetical questions to the VE. In the first hypothetical, the ALJ asked the VE to assume that plaintiff could occasionally lift twenty pounds, frequently lift ten pounds and perform pushing and pulling to the extent of twenty pounds but less than ten pounds with the upper left extremity. Docket 8, p. 45. He also indicated that her left hand is occasionally numb and can't feel texture. *Id.* In response to this first hypothetical, the VE testified that plaintiff could perform her previous work as a dispatcher. The second hypothetical only changed the ability to lift ten pounds occasionally, less than ten pounds frequently, and walk/sit for six hours for 30 minutes at a time. The VE testified that the plaintiff could still perform the job of a dispatcher in response to hypothetical two.

Following the ALJ's questions to the VE, plaintiff's attorney posed his own hypothetical to the VE that contained the limitations placed on plaintiff by state agency examiner Dr. Sadler, Dr. Montgomery and Dr. Assaf. This question was based upon the ALJ's first hypothetical, but

8

included an inability to type with the left hand, push/pull limitation on the right hand of 30 pounds, and minimal use of the left hand with regard to tasks requiring manual dexterity. In response to this hypothetical, the VE testified that plaintiff would not be able to perform the job of a dispatcher or any other job. Specifically, the VE testified that the inability to use her left hand to type or push/pull with the left hand prevented plaintiff from working. Docket 8, p. 45-46.

The record supports a finding that plaintiff has limitations upon the functionality of her left hand. The only physicians who provided opinions as to plaintiff's ability to use her left hand indicated that she has severe limitations. "An ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Ripley v. Chater*, 67 F.3d 552, 557-58 (5th Cir. 1995). This appears to be exactly what the ALJ did in this case. In direct contradiction to both the medical evidence in the record and applicable case law, the ALJ ignored physician limitations that were clearly supported by medical proof, established an RFC which is not based upon medical evidence, then accepted the VE's testimony as to plaintiff's ability to work which was based upon the unsupported RFC.

The Fifth Circuit has ruled that a VE's testimony based upon a defective hypothetical question cannot constitute substantial evidence of a non-disability. *Boyd v. Apfel*, 239 F.3d 698 (5th Cir. 2001). Therefore, the undersigned finds that the ALJ did not satisfy his affirmative duty to "ensure that his decision is an informed decision based upon sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). In fact, the hypothetical posed by plaintiff's counsel, which *is* supported by the record, mandates a finding that plaintiff is in fact disabled because she cannot perform her past work, and there are not jobs either in Mississippi or the national

9

economy that she could perform. Docket # 8, p. 46-47. The court holds that the ALJ's decision was not supported by substantial evidence and should be vacated.

## IV. DETERMINATION OF BENEFITS

In determining whether to reverse the Commissioner's final decision and remand or to grant benefits without further administrative review, the court must look to the completeness of the record, the weight of the evidence in favor of the plaintiff, the harm to the claimant that further delay might cause, and the effect of a remand delaying the ultimate receipt of benefits by a deserving plaintiff. SOCIAL SECURITY LAW & PRACTICE, §55.77, p. 129. In this case, the plaintiff has been very patient. She has been seeking benefits through the administrative processes for almost five years. The evidence in this case is clear. Both the plaintiff's treating physician and the agency examiner concluded that plaintiff is severely limited in pushing, pulling, handling and fingering with her left hand, therefore limiting her ability to type with her left hand. Additionally, according to the VE, there are no jobs in Mississippi or the national economy that plaintiff could perform due to these limitations, and, as a result, plaintiff is presumed to be disabled. The court holds that because the evidence is conclusive, an award of benefits at this stage would be in the best interests of the plaintiff's health and welfare and will avoid further undue delay which would result upon remand for additional review. The court directs that this case be remanded for the sole purpose of determining the amount of benefits to be awarded to the plaintiff under the Act.

## V. PLAINTIFF'S REMAINING ARGUMENTS

Because the court has determined that the plaintiff is disabled under the Social Security Act, and this action is being remanded for the sole purpose of determining the amount of benefits

to be awarded to the plaintiff under the Act, the court need not address the merits of the plaintiff's remaining arguments at this time.

## VI.  CONCLUSION

For the foregoing reasons, the court finds that the decision of the ALJ was not supported by substantial evidence, that a substantial number of jobs do not exist in which plaintiff can perform due to her limitations, and plaintiff is entitled to benefits under the Social Security Act. This case is remanded for the sole purpose of determining the amount of benefits to be awarded. A final judgment in accordance with this memorandum opinion will issue this day.

SO ORDERED, this, the 21st day of March, 2013.

      /s/ S. Allan Alexander  
      UNITED STATES MAGISTRATE JUDGE